UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE JIMENEZ, individually and on
behalf of others similarly situated,

    Plaintiff,                               Civil Action No. 07-14494

v.                                       HON. PAUL V. GADOLA
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN
                                             U.S. Magistrate Judge

ALLSTATE INDEMNITY COMPANY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendant Allstate Indemnity Company's *Motion to Dismiss or to Compel Appraisal and to Dismiss or Stay* [Docket #5], referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend first that the motion be DENIED as to failure to state a claim for breach of contract, fraud, and/or declaratory judgment. Second, the motion to dismiss the unjust enrichment claim should be GRANTED. Third, the motion to dismiss Plaintiff's class action claims should be DENIED. Fourth, the motion to compel an appraisal of the property in question staying the case should be DENIED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, proceeding individually and on behalf of all similarly situated Allstate Landlord Package Policy ("Policy") coverage policy holders, filed the instant action for breach of contract, fraud, and unjust enrichment on October 22, 2007.[1] Plaintiff alleges that Allstate, contrary to the terms of the Policy, "engaged in a common practice of limiting loss settlement" to either "the lesser of the market value of the damaged property or the amount necessary to repair the damaged property less depreciation." *Complaint* at ¶¶1-2. Instead, Plaintiff contends Defendant is obligated under the terms of the Policy to provide "the lesser of the amount necessary to repair or replace the damaged property less depreciation or the limit of liability applying to the property." *Id.* at ¶2.

Plaintiff, the owner of the real property located at 9660 Graham, Detroit, Michigan makes the following factual allegations. Defendant, incorporated in Illinois and authorized to issue real property insurance policies in the State of Michigan, issued the Policy for the above property providing coverage for loss caused by fire. *Id.* at ¶¶7-8. When performing its underwriting of the premises, Defendant determined that the actual cash value (ACV) was $150,000, charging Plaintiff "an applicable premium based on $150,000 of insurance coverage." *Id.* at ¶21. As a result of substantial damage caused by a June 11, 2006 fire, Plaintiff submitted a claim for loss and damage. *Id.* at ¶20. Defendant paid Plaintiff $48,000 on November 20, 2006, determining the actual cash value for purposes of settlement by the

---

[1]Because Plaintiff has agreed to the dismissal of its claim of unjust enrichment, both in its pleading and at oral argument, the Court will omit discussion of that claims, other than to recommend that the claim be dismissed. *Plaintiff's Response, Docket #7* at 7.

property's "market value," on the basis of a market value appraisal. *Id.* at ¶¶26-27.

Plaintiff alleges that Defendant breached its contractual duties under the Policy by "failing to offer to settle as set forth in the policy," resulting in "Plaintiff and the putative class not being fully indemnified for their property losses," contending further that Defendant "engaged in unfair or deceptive practices" in violation of the Uniform Trade Practices Act ("UTPA"), M.C.L. 500.2001, *et. seq. Id.* at ¶¶29-33. Plaintiff alleges further that Defendant's practices deprived Plaintiff and the putative class of full indemnity for their property losses as required by Defendant's policy and "applicable law." *Id.* at ¶36. The Complaint states that "[u]pon information and belief," Defendant, "with the intent to deceive or mislead, trained its adjusters to use market value for determining claims, "knowingly divert[ing] from the policy language," further alleging that by its "widespread pattern and practice, Defendant "unilaterally reduced its coverage obligation . . . to the continuing detriment of Plaintiff and the Class." *Id.* at ¶¶40-44. The Complaint alleges that the action "may properly be maintained as a class action," pursuant to the requirements of Fed. R. Civ. P. 23. Plaintiff, on behalf of himself and the putative class seeks monetary damages, declaratory judgment, costs, and attorneys' fees.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are

presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. V. Twombley,*—U.S.—, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court set forth what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. The Court held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level. . .on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is *plausible* on its face." *Twombly*, at 1974 (emphasis added).

### III. ANALYSIS

**A. Motion to Dismiss Individual and Class Claims**

**1. Breach of Contract**

First, Defendant argues that dismissal is appropriate because Plaintiff has failed to allege a breach of any of the provisions of the Landlords Package Policy. Defendant cites the following provision from the Policy:

> Loss to property insured by this policy . . . will be settled on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the smallest of: a) the actual cash value of the damaged, destroyed or stolen property at the time of loss; b) the amount necessary to repair or replace the damaged, destroyed or stolen property with other of like kind and quality; or c) the limit of liability applicable to the damaged, destroyed or stolen property."

*Defendant's Brief, Docket #5* at 4; *Complaint,* Exhibit 1. Defendant contends that it permissibly used a market value estimate in arriving at an actual cash value of $48,000 for the insured property, citing *Davis v. National American Insurance Co.,* 78 Mich. App. 225, 230-234, 259 N.W. 2d 433, 436-438 (Mich. App. 1977) for the proposition that the market value may be used in determining the actual cash value at the time of loss. *Id*. (*citing* 61 A.L.R. 2d 711, 718-719 (1958)). Defendant rejects the notion that it must either pay the amount necessary to repair or replace less depreciation or pay the limit of liability, arguing that these options refer to "a limitation on the types of payments that can be made under the Policy" rather than "affirmative payment obligations." *Defendant's Brief* at 5 (emphasis removed). Defendant contends that if Plaintiff disputes the cash settlement of $48,000, it should submit to the appraisal provision of the Policy which requires the completion of an appraisal procedure prior to the commencement of a lawsuit. *Id.* at 6.

It is important to note again that Defendant brings this motion under Rule 12(b)(6)**.** Thus, the Plaintiff's factual allegations are taken as true, and if his breach of contract claim

is plausible on its face, within the meaning of *Twombley*, the motion must be denied. The central issue in this claim is the meaning of the contractual term "actual cash value," a term not explicitly defined in the insurance contract. The Plaintiff's position is that his contract with State Farm excludes market value as a means of determining actual cash value. The Defendant, citing *Davis, supra*, contends that under the broad evidence rule, market value may be considered in determining ACV, and nothing in the contract provides otherwise.

An insurance contract is enforceable when it is "clear and unambiguous on its face." *Farm Bureau Mut Ins Co v. Blood,* 230 Mich.App 58, 61; 583 NW2d 476 (1998). However, "[a]n insurance contract is ambiguous if, after reading the entire contract, its language reasonably can be understood in differing ways." *Id.* at 61-62. *See also Raska v. Farm Bureau Mut. Ins. Co. of Michigan,* 412 Mich. 355, 362, 314 N.W.2d 440 (1982) (opinion of Coleman, C.J.)(a contract is ambiguous when its words may be reasonably understood in different ways). The resolution of a contract ambiguity is a question of fact for the jury, *Klapp v. United Ins. Group Agency, Inc.,* 468 Mich. 459, 469; 663 NW2d 447 (2003), and therefore not amenable to a Rule 12(b)(6) motion.

Here, the Court is faced with two competing interpretations of a critical contract term. The Plaintiff's interpretation–that ACV means cost of replacement or repair minus depreciation, and excludes market value–is a reasonable interpretation, for several reasons. First, three provisions of the policy itself refer to "deductions for depreciation" in conjunction with determining ACV. The first is the policy endorsement quoted above, and relied upon by the Defendant, which states that property protection claims "will be settled

on an actual cash value basis. *This means there may be a deduction for depreciation.*" (Emphasis added). Likewise, pg. 17 of the policy states again that "payment will be made on an actual cash value basis. *This means that there may be a deduction for depreciation.*" (Emphasis added). Finally, p.4 of the policy declarations states:

> "Your property is covered on an actual cash value basis. We'd like to remind you that your policy provides actual cash value coverage. So if you experience a covered loss, we will pay for a loss to your covered property on an actual cash value basis, *meaning there may be a deduction for depreciation.*" (Emphasis added).

Deductions for depreciation occur where the ACV is determined by cost of repair or replacement minus depreciation; a deduction for depreciation would be irrelevant to a market value analysis. For purposes of the present motion, the language of the contract therefore supports Plaintiff's interpretation of the term "actual cash value."

Secondly, Plaintiff alleges that State Farm issues other property insurance policies that specify "market value" as the measure of damages.[2] If, as Defendant claims, the term "cash value" in Plaintiff's contract can mean "market value," why would it be necessary to have specific "market value" policies?[3]

---

[2] At oral argument Defendant's counsel could neither confirm nor deny that State Farm issues such policies. This is an issue that should and will be developed in discovery.

[3] I recognize that there might be another inference, for example, a "market value" policy excludes reliance on any other means of calculating ACV, whereas Plaintiff's policy would allow an umpire to utilize the broad evidence rule and consider a variety of factors. The point is not that Defendant's issuance of "market value" policy conclusively proves Plaintiff's interpretation of ACV, but that it is one of several factors that should be addressed to the trier of fact rather than in a Rule 12(b)(6) motion.

Third, cost minus depreciation has become a widely accepted method of determining ACV. *Davis*, of course, does not support the proposition that the cash value for settlement purposes may be derived purely from the market value. Instead, *Davis,* states that "we do not believe market value is the sole measure," explicitly rejecting the contention that "cash value means market value." 78 Mich. App. at 233, 259 N.W. 2d at 438. While *Davis* holds that "*any* evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property might be considered by the trier of facts in determining 'actual cash value' at the time of loss," other Michigan courts have defined "cash value" as the cost of replacement minus depreciation *Id.* *See Salesin v. State Farm Fire & Cas. Co.,* 229 Mich.App. 346, 366, 581 N.W.2d 781, 790 (Mich.App 1998)(acknowledging *Gilderman v. State Farm Ins. Co.* 437 Pa.Super. 217, 221, 649 A.2d 941, 943 (Pa.Super.1994) which found that "actual cash value consistently has been interpreted as meaning the actual cost of repair or replacement less depreciation." (Internal citations omitted).[4] *See also D.R.C.D.T., Inc. v. Integrity Ins. Co.,* 816 F.2d 273, 277 (6th Cir. 1987) ("[T]he method employed by the public adjuster to value the property--replacement cost, less depreciation--has been widely used and is considered an acceptable method of determining actual cash value.").

In the same vein, the court in *Salesin* noted that State Farm's internal Operation

---

[4] *Salesin* and *Gilderman* are not precisely on point with the present case. The issue in those cases was whether, in applying the cost-minus-depreciation method to a repair scenario, the contractor's overhead and profit could also be deducted from actual cash value. The cases are indicative, however, of the prevalence of the cost-minus-depreciation method of determining ACV.

Guide, although not a part of the contract at issue, in fact defined ACV as follows:

> "When not in variance with case law, ACV is defined as replacement cost less depreciation. Operation Guide 75-50 provides specific guidelines."

That particular provision may or may not be part of State Farm's current Operation Guide–that will be a matter for discovery. However, because the term "actual cash value" is subject to different interpretations, the Defendant's own internal policies and definitions may be considered in construing the contract.

Further, "it is already well established that ambiguous language should be construed against the drafter, i.e., the insurer." *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 62, 664 N.W.2d 776, 787 (2003).

Therefore, the allegation that Defendant relied exclusively on the property's *market* value in computing its *cash* value for purposes of settlement states a breach of Defendant's contractual obligations easily sufficient to survive this motion.

Finally, I disagree with Defendant's contention that Plaintiff's cause of action seeks to deprive it of its right under the Policy to settle claims on a cash value basis for less than the insured maximum. *Defendant's Brief* at 5. Defendant creates a false dichotomy by arguing that the allegation that it failed to "apply depreciation to its repair estimate in determining cash value," would limit it to settling for either "the amount necessary to repair or replace the damaged . . . property" or the limit of liability. *Defendant's Brief* at 5; *Complaint* at ¶22. The Complaint does not allege that Defendant is barred from exercising any of its three options in settling a claim, but instead, disputes Defendant's means of

deriving a "cash value" for settlement purposes on the basis of "market value." As noted above, the Complaint's contention that Defendant should instead use "replacement cost, less depreciation" in determining cash value is well established. *D.R.C.D.T., Inc., supra*.

**2. Fraud**

Defendant contends next that Plaintiff's fraud claim "contains only a general statement of the supposed content of the representation without identification of the time and place at which it was purportedly made to plaintiff or the identity of the person making the representation." *Defendant's Brief* at 6-7. Defendant cites *Buntea v. State Farm Mut Auto Ins. Co.*, 467 F. Supp. 2d 740, 747 (E.D. Mich. 2006)(Edmunds, J.)(*citing Hi-Way Motor Co. V. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W. 2d 813, 816 (1976). As such, Defendant argues that Plaintiff has failed to state his fraud claim with sufficient particularity as required by Fed. R. Civ. P. 9(b). *Defendant's Brief* at 6 ( *citing Walburn v. Lockheed Martin Corp.*, 431 F. 3d 966, 972 (6th Cir. 2005)). In addition, Defendant contends that this claim founders on Plaintiff's failure to allege misrepresentation, noting that "[P]laintiff does not allege any representation by Allstate beyond the plain language of the Policy." *Id.* at 7.

Fed. R. Civ. P. 9(b) requires "plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)(*citing Coffey v. Foamex L.P.,* 2 F.3d 157, 161-162 (6th Cir.1993)). "Under Michigan law, a "valid claim for fraud . . . must state the following elements:

-10-

> (1) the defendant made a material misrepresentation, (2) the misrepresentation was false, (3) the defendant knew the statement was false when made, (4) defendant intended that the plaintiff act upon the statement, (5) the plaintiff actually acted upon the statement, and (6) plaintiff suffered damages as a result."

*Buntea, supra*, 467 F.Supp.2d at748. "The particularity requirement of Rule 9(b) . . . ensures that fraud allegations are concrete enough to give defendants fair notice of the grounds of the complaint, so that they can prepare a defense." *In re Consumers Power Co. Securities Litigation,* 105 F.R.D. 583, 591 (D.C.Mich.,1985)(Joiner, J.).

On their face, paragraphs 36 through 41 of the Complaint include the six elements of fraud set forth in *Hi-Way Motor, supra.* I therefore disagree with Defendant's argument that the Complaint fails to plead misrepresentation or makes only conclusory allegations of fraud.

### a. Material Misrepresentation

The complaint sets forth the first element of this claim by stating that "Defendant misrepresented to Plaintiff and the putative class that they were entitled to be indemnified for the lesser of the amount necessary to repair or replace the damaged property less depreciation." *Complaint* at ¶37. Paragraph 37 incorporates the Complaint's earlier allegation that the landlord package policies contain multiple indications that the actual cash value would be calculated by replacement value minus depreciation. *Id.* at ¶¶10-11, Policy at pg. 17, Landlord Package Policy Declarations at pg. 4; Policy Endorsement. Defendant's alleged representation that the cash value would be calculated by replacement value less

depreciation, followed by its subsequent refusal to settle for more than market value (a term absent from the policy package) states a claim of misrepresentation.

### b. Remaining Elements of the Fraud Claim

Likewise, the Complaint satisfies the remaining elements of the fraud claim by alleging that "the misrepresentation was false" (¶ 38); "the defendant knew the statement was false" at the time the contract was created (¶39); "[D]efendant intended that the plaintiff act upon the statement" and that "[P]laintiff actually acted upon the statement" (¶7); and "[P]laintiff suffered damages as a result (¶23)." *Hi-Way Motor Co.,* 398 Mich. at 336, 247 N.W.2d at 816. The Complaint further satisfies the "time, place, and content," requirement of a Rule 9(b) claim by alleging that Defendant refused settle the June, 2006 claim for more than market value, despite the Policy's indication that cash value would be figured by replacement value minus depreciation. *Yuhasz v. Brush Wellman, supra*. Plaintiff notes further that aside from the fraud claim's sufficiency under Rule 9(b), Defendant continues to "make[] no bones whatsoever about making its payment determination on solely a market value basis" despite the fact that it allegedly collected premiums calculated by the much higher cash value basis. [5] *Plaintiff's Brief* at 15.

---

[5]

Plaintiff states that prior to submitting a claim and being informed that he was entitled to a market value of only $48,000, his premiums reflected a cash value of $150,000. *Complaint* at ¶21. The Complaint alleges that in contrast to its post-claim "market value" settlement, Defendant determined an actual cash value of $150,000 at the time it "performed its underwriting of the insured premises . . . without any reference or consideration of market value," charging Plaintiff "an applicable premium based on $150,000 of insurance coverage." *Id.*

### 3. Declaratory Judgment - "Actual Controversy"

Defendant submits next that Plaintiff's "declaratory judgment claim fails as a result of the deficiencies in the breach of contract claim upon which it relies." *Defendant's Brief* at 10. As such, Defendant contends that the absence of a case or controversy divests this Court of jurisdiction. *Id.* (*citing Brennan v. Rhodes*, 423 F. 2d 706, 706-707 (6th Cir. 1970)).

Because Plaintiff has stated a claim for both breach of contract and fraud, dismissal of the declaratory judgment claim is inappropriate. I also disagree with Defendant's argument that the issue at hand "is inherently unsusceptible to legal determination." *Defendant's Reply* at 5 (emphasis removed). At the very least, the allegation that Defendant's "practice of paying claims based on market value" after having collecting premiums based on a higher cash value basis to the detriment of Plaintiff and the putative class constitutes a justiciable controversy.

### 4. Class Claims

Likewise, Defendant contends that Plaintiff's failure to state of claim for either breach of contract or fraud requires dismissal of the class claim, but makes no independent argument against class certification. *Defendant's Brief,* at 10-11; (*citing O'Shea v. Littleton*, 414 U.S. 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974)). Because the underlying claims of breach

of contract and fraud are viable, the motion to dismiss the class claims should be denied.[6]

### B. Motion to Compel Appraisal

Finally, Defendant argues alternatively that the Court should stay proceedings and compel appraisal of the property at issue, contending that the Policy "contains an appraisal provision that, if invoked by either party, requires the completion of an appraisal procedure prior to the commencement of a lawsuit." *Defendant's Brief* at 11 (*citing Complaint*, Exhibit 1, at 19, ¶7). Defendant submits that the dispute at hand is limited to the settlement amount and should thus be determined through the appraisal process described in the Policy. *Defendant's Reply*, *Docket #13* at 6-7 (*citing Society of St. Vincent De Paul in Archdiocese of Detroit v. Mt. Hawley Ins. Co.,* 49 F.Supp.2d 1011, 1013 (E.D.Mich.1999)(Edmunds, J.)). Defendant also contends that the policy forbids Plaintiff from filing suit before submitting to the appraisal process.

Plaintiff responds that because the instant dispute pertains to "policy interpretation" it is not appropriate for appraisal. *Plaintiff's Brief* at 18. Plaintiff contends further that because Defendant failed to request an appraisal before the commencement of the lawsuit, that it has "waived and/or is estopped from relying upon the appraisal provision of the Policy." *Id.* at 19.

---

[6] I also agree that the independent "question of class certification in not ripe, and thus Defendant's motion should be denied at this time as premature." *Plaintiff's Brief* at 17.

The appraisal provision of the Policy states in pertinent part that "[i]f you and we fail to agree on the amount of loss, either party may make written demand for an appraisal." *Docket #1*, Exhibit 1, Policy at 19, ¶7.

> "Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. . . . The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement . . . the amount agreed upon shal be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by the appraisers or an appraiser and the umpire will determine the amount of loss.

*Id.* This provision, "prescribed by Michigan statute . . . must be incorporated into the fire insurance policy." *Hartford Ins. Co. v. Miller,* 2006 WL 2844124 *6 (E.D.Mich.2006)(Lawson, J.); M.C.L. 500.2833(m). Such "appraisal clauses constitute[] . . . common-law arbitration agreement[s]." *Davis, supra,* 78 Mich.App. at 232, 259 N.W.2d at 437; *Manausa v. St. Paul Fire and Marine Ins. Co.*, 356 Mich. 629, 633, 97 N.W.2d 708 (1959).

**1. Appraisal Is Inappropriate Prior to a Determination of Whether the Policy Supports Defendant's Position That "Market Value" Can Be Used Exclusively to Obtain a "Cash Value" for Settlement Purposes.**

At least superficially, this dispute involves the settlement amount. However, the overriding issue is whether Defendant is entitled to compute "cash value" for purposes of settlement on the exclusive basis of a property's "market value," or whether the contract actually precludes consideration of market value. This is an issue of contract interpretation.

Because the question pertains to the *means* of determining coverage as well as a monetary dispute, compelling appraisal would be premature. "[W]here the parties disagree on coverage, the court should determine that issue 'before an appraisal of the damage to the property.'" *Detroit City Dairy, Inc. v. United Nat. Ins. Co.,* WL 3333020, *2 (E.D.Mich.2007)(Majzoub, M.J.)(*citing Auto-Owners Ins. Co. v. Kwaiser,* 190 Mich.App. 482, 476 N.W.2d 467, 470 (Mich. App.1991)). Because in appraisals, "[t]he umpire generally is limited to determining the amount of loss based on competing claims of the parties. . . . '[m]atters of insurance coverage are for a court and not for appraisers. . .'" *Hartford, supra,* 2006 WL 2844124, *6 (E.D.Mich.,2006)(*citing Kwaiser*, 190 Mich.App. at 486, 476 N.W.2d at 469 (*citing Safeco Ins. Co. of Am. v. Sharma,* 160 Cal.App.3d 1060, 1063 (1984))(internal citations omitted). *See also Zamplas Johnson, P.C. v. Cincinnati Ins. Co.,* 367 F.Supp.2d 1101, 1106 (E.D.Mich.,2005)(Taylor, J.)(denying the defendant's request for appraisal on the basis that "several coverage issues have not been resolved")[7].

---

[7]

Defendant contends that *Kwaiser,* "actually supports" its argument by the finding that "the method of determining the loss" should be determined by the appraisers. *Defendant's Reply* at 7 (citing Kwaiser at 488, 470). Defendant's "method" argument is inapplicable. The appraisers' "method" discussed in *Kwaiser*, refers to the narrow issue of appraisers' "method" of valuing household items that had been discarded by the insured because of mildew prior to the appraisal. *Id.* at 487, 470.

Defendant's reliance on *Society of St. Vincent De Paul in Archdiocese of Detroit v. Mt. Hawley Ins. Co.,* 49 F.Supp.2d 1011, 1013 is also misplaced. *In Society of St. Vincent De Paul*, the court granted the defendant's motion for appraisal only *after* ruling on outstanding issues of contract interpretation. Likewise here, whether the Policy read as a whole supports the "market value" equals "cash value" argument is an issue of contract interpretation. Moreover, while the court in *Society of St. Vincent De Paul* referred the issue of "cash value" to the appraiser, unlike here, there is no indication that parties disagreed on the legal meaning of the term "cash value."

Whether Defendant is entitled to derive a "cash value" amount on the basis "market value," an issue of contract interpretation, is the clearly the "elephant in the room" question that must be addressed before appraisal can take place. Plaintiff contends that he is entitled to $150,000 if the "repairs less depreciation" formula for "cash value" is used. Defendant at least concedes the possibility that the cost of repairs minus depreciation exceeds the limits of Plaintiff's $150,000 coverage limit. *Plaintiff's Brief* at 10; *Defendant's Reply* at 2, FN 1. In contrast, under the "market value" method of determining cash value, Plaintiff is entitled to only $48,000, at least according to Defendant's assessment. Although parties disagree on a settlement number, this dispute is merely symptomatic of the overriding contract issue of how "cash value" should be calculated.

**2. The Present Action Does Not Amount to Non-compliance with the Policy**.

Defendant, arguing that it requested appraisal on December 3, 2007, notes that the Policy states that "[n]o suit or action may be brought against us unless there has been full compliance with all policy terms." *Defendant's Brief* at 12, Policy, Michigan Landlords Package Policy Amendatory Endorsement at 3, ¶13. This argument fails for multiple reasons. First, because the Policy does not state that "appraisal must precede suit," Plaintiff cannot be held non-compliant. *Detroit City Dairy, supra*, 2007 WL 3333020, * 2 (E.D.Mich. 2007). Further, as discussed above, because the contract interpretation issue of whether "cash value" means, includes or excludes "market value" is not appropriately

addressed to an appraiser, Plaintiff's failure to submit to the appraisal process before filing suit does not amount to non-compliance with the terms of the Policy. Most obviously, the Policy does not state that a party must submit to the appraisal process absent a demand from the other side. Defendant did not make its demand for an appraisal until December 3, 2007 - well over a month past the lawsuit's October 22, 2007 inception.

However, the fact that Defendant did not invoke its right to appraisal until after Plaintiff filed suit does not make it permanently unavailable. The fact that coverage issues should be decided by the courts does not obviate the subsequent need for appraisal. *See Detroit City Dairy, Inc. supra,* 2007 WL 3333020, at *2 (Granting a motion to compel appraisal first requested following summary judgment on coverage issues). Rather, "a court is to determine coverage in a declaratory action *before* an appraisal of the damage to the property." *Kwaiser*, 190 Mich.App. at 487, 476 N.W.2d at 469 - 470.

### 3. The Issue of Whether Defendant Waived its Right to Appraisal Is Not Ripe.

Finally, Plaintiff, citing *Maki Commonwealth Ins. Co. Of New York*, 232 Mich. 295, 205 N.W. 83 (1925), contends that "a waiver of the right to Appraisal may be inferred" by Defendant's "arbitrary denial of liability beyond a stated sum." *Plaintiff's Brief* at 20. Because Defendant's motion to compel appraisal is denied on other grounds, the Court need not and should not determine at present whether Defendant has waived this right pursuant to *Maki.* Whether Defendant's exclusive use of market value to determine cash value was impermissible is dispositive of this case, and the issue of waiver is thus unripe for

determination.

**CONCLUSION**

For these reasons, I recommend first that the motion be DENIED as to failure to state a claim for breach of contract, fraud, and/or declaratory judgment. Second, the motion to dismiss the unjust enrichment claims should be GRANTED. Third, the motion to dismiss Plaintiff's class action claims should be DENIED. Fourth, the motion to compel an appraisal of the property in question staying the case should be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response

shall address specifically, and in the same order raised, each issue contained within the objections.

                                           S/R. Steven Whalen
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE

Dated: July 18, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 18, 2008.

                                           S/Susan Jefferson
                                           Case Manager